UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DANIEL A. LASTARZA,<br>    Plaintiff,<br><br>v.<br><br>PETER NERONHA; PATRICIA A. COYNE-FAGUE; WAYNE T. SALISBURY; JR.; MICHAEL FENNESSEY; LYNDA AUL; CHRISTINE ROBINSON; BILLY BEGONIS; ARMAND LUPIEN; JOSEPH FORGUE, JR.; WALTER DUFFY; JOHN/JANE DOE (DOC); JOHN PERROTTA; JAMES BAUM; JEANINE MCCONNAGHY; DANIEL HOPKINS; and JOHN/JANE DOE (RIAG),<br>    Defendants. | C.A. No. 23-cv-235-JJM-LDA |

ORDER

Plaintiff Daniel A. Lastarza sued Defendants Peter F. Neronha, Attorney General for the State of Rhode Island, Patricia A. Coyne-Fague, Director of the Rhode Island Department of Corrections, Wayne T. Salisbury, Jr., Michael Fennessey, Lynda Aul, Christine Robinson, Billy Begonis, Armand Lupien, Joseph Forgue, Jr., Walter Duffy, John Perrotta, James Baum, Jeanine McConaghy, and Daniel Hopkins, each in their individual and official capacities ("State Defendants") for various violations of the Fourteenth and Eighth Amendments arising out of a situation where he believes the State put him in danger by identifying him as an informant in a previous attack on a correctional officer at the ACI.

Upon the State Defendants' initial motion to dismiss and Mr. Lastarza's motion to amend to, among other things, add more defendants, the Court allowed the amendment. Mr. Lastarza filed his Amended Complaint (ECF No. 23) and now the State Defendants filed their Motion to Dismiss the Amended Complaint on several grounds, including statute of limitations, prosecutorial immunity, and failure to state a claim. ECF No. 32. Because the Court finds that all of Mr. Lastarza's claims are time barred under the three-year statute of limitations, it GRANTS the Defendants' Motion to Dismiss and dismisses his Amended Complaint. *Id.*

I. BACKGROUND

On May 11, 2018, a group of inmates, John Carillo, Joshua Beeker, and Jared Tefft, attacked Correctional Officer Messier ("Messier Attack"). *See* ECF 23, ¶ 22. After the incident, Mr. Lastarza, an inmate serving a fifty-year sentence at the Rhode Island Department of Corrections ("RIDOC"), spoke with Lieutenant Brian Fortes regarding "information about a conversation [relating to the attack on Officer Messier] that [Mr. Lastarza] overheard while walking the track in maximum." *Id.* ¶ 31. The State filed a criminal case related to the Messier Attack sometime thereafter. In or around January 2019, discovery materials related to that case circulated around the maximum security facility where Mr. Lastarza was housed, which identified him as a witness in that criminal case. *See id.* ¶¶ 35-40. From then, Mr. Lastarza alleges that he "began to experience severe consequences from other prisoners; such as various forms of physical as well as psychological abuse, . . . sometimes on a consistent and daily basis, as a result of these materials that were

2

being circulated around maximum security." *Id.* ¶ 40. Mr. Lastarza alleges that Defendant Joseph Forgue, Jr., a correctional officer investigator, "knowingly identified [him] in the report and subsequent discovery of the inmate charged in the crime of the [Messier Attack] on or about early 2018." *Id.* ¶ 14. Mr. Lastarza alleges that "many of the personnel as well as the administration, both within the facility as well as other departments including the Director['s] office [were] acutely aware" of Mr. Lastarza's "situation" but does not specify which, if any, of the Defendants. *Id.* ¶ 41.

Mr. Lastarza alleges that on January 29, 2019, Jeannine McConaughy, a former special assistant attorney general, submitted discovery to the Rhode Island Superior Court in relation to the prosecution of the Messier Attack criminal case that identified Mr. Lastarza and falsely depicted his statements related to the criminal case regarding the Messier Attack. *Id.* ¶ 45. John Perrotta and James Baum, prosecutors with the Rhode Island Attorney General's Office, were also assigned to the Messier Attack criminal case. *Id.* ¶ 46. About six months later, Mr. Lastarza alleges that he "raised concerns about being identified by name in discovery documents of inmates Carillo, Tefft, and Becker; identifying [Mr. Lastarza] as an informant[,]" at his yearly classification hearing, but Christine Robinson, the chair of the classification board, told him to "worry about yourself." *Id.* ¶ 48. On July 26, 2019, at a motion hearing regarding Mr. Lastarza's own criminal case, and his motion to reduce his sentence, Mr. Perrotta allegedly "suggested to [Mr. Lastarza], that [he] should 'watch [his] back'[.]" *Id.* ¶ 49. Mr. Lastarza alleges "at that time [he] was

unaware that ["watch your back"] was related to this current case. That only became apparent as time and events progressed." *Id.* Mr. Lastarza then dropped out of all programs out of fear of retaliation from other inmates. *Id.* ¶ 50. The next month, he wrote to then-Director Coyne-Fague to complain about being identified as a potential witness in the Messier Attack case, and "that he would like to be removed from any materials related to the case" but he received no response. *Id.* ¶ 54. On June 9, 2020, the Attorney General's Office filed supplemental discovery in the Messier Attack case that identified Mr. Lastarza as a potential witness expected to testify for the State. *Id.* ¶¶ 60, 67.

Two years later, Mr. Lastarza met with his GED teacher to explain why he dropped out of his classes explaining "the continuing abuse and concerns [] since the 2018 discovery began to surface in 2019." *Id.* ¶ 70. His teacher reached out to Captain Duffy, which prompted an investigative interview between Mr. Lastarza and Correctional Officer Investigator Billy Begonis. *Id.* ¶¶ 71-72. When Mr. Lastarza asked Officer Begonis "how his name got into the discovery, and why it was not a true representation of the Lt. Fortes [Forgue's] conversation . . . Begonis' response was that 'it was the Rhode Island State Police that was responsible for identifying plaintiff' in the reports." *Id.* ¶ 74. Captain Duffy also had Mr. Lastarza meet with a social worker. *Id.* ¶ 76.

Mr. Lastarza was later classified to medium security where he believes that his bunk mate "search[ed] through [his] legal mail [] while [he] was out of the cell, discovered material, and brutally attacked [him]." *Id.* ¶¶ 81, 84. S.I.U Investigator

4

Armand Lupien conducted an extensive investigation. *Id.* ¶ 85. Mr. Lastarza was found guilty of fighting and given twenty days disciplinary confinement. *Id.* at ¶¶ 85–87. He explained on appeal to Warden Devine that he was assaulted, but his appeal was rejected. *See id.* ¶¶ 88, 90. Mr. Lastarza also states, "Defendant Deputy Warden Aul (a former investigator with the [Special Investigation Unit]) handled the appeal . . . and ruled the booking valid based on the fact that 'inmate refused officers command to break it up.'" *Id.* ¶ 90. When released from disciplinary confinement, Mr. Lastarza requested a block change, which was granted. *Id.* ¶ 94. He twice reported this assault to the Rhode Island State Police telephone number available for inmates to do so where he left detailed messages, indicating that he wanted to report the assault on him. *Id.* ¶¶ 95, 96. He allegedly did not receive a response. *Id.*

Several months later, Mr. Lastarza requested a single cell assignment considering his ongoing issues with inmates from Maximum (who presumably knew about his name appearing in court documents as a witness to the Messier Attack) being transferred to Medium. *Id.* ¶¶ 99-100. Deputy Warden Fennessey referred his request to S.I.U. *Id.* ¶ 101. He also reached out by letter to Attorney General Peter Neronha to alert him to the danger he believed he was facing in prison because of his identification as a state witness against other inmates. *Id.* ¶¶ 106-07.

Mr. Lastarza filed an Amended Complaint on April 25, 2024 that alleges:

1. violations of his Fourteenth Amendment right to Due Process when Defendants intentionally identified Mr. Lastarza as a witness in a 2018 state criminal case and withheld his constitutional right to file a complaint or have an investigation

5

made into another inmate assaulting him, and prevented him using the system available to inmates to report assault (Count I);

2. violations of Mr. Lastarza's Fourteenth Amendment right to Equal Protection when Defendants intentionally disregarded inmate attacks on Mr. Lastarza, and then gave him 20 days in disciplinary confinement for assault when he was involved in an inmate-on-inmate assault (Count II);

3. violations of Mr. Lastarza's Fourteenth Amendment Due Process rights when Defendants identified him as a witness in a 2018 state criminal case while granting other individuals confidential status in discovery documents (Count III); and

4. violations of Mr. Lastarza's Eighth and Fourteenth Amendment rights against cruel and unusual punishment when Defendants subjected him to the cruelty of the prison population for more than five years, prevented him from using the reporting system available to inmates to report assault, and gave him 20 days in disciplinary confinement for assault after Mr. Lastarza was involved in an inmate-on-inmate assault (Count IV).

Before the Court for decision is Defendants' Motion to Dismiss Mr. Lastarza's entire Amended Complaint. ECF No. 32.

## II.  STANDARD OF REVIEW

When the Court reviews a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it accepts all Plaintiff's factual allegations as true to decide whether they "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court may not consider "conclusory legal allegations." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013) (citing *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). Additionally, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996) (citations omitted).

### III. DISCUSSION

Because Defendants move to dismiss all Counts of Mr. Lastarza's Amended Complaint based on its statute of limitations affirmative defense, the Court will turn to that argument first. Only if it finds that Mr. Lastarza's claims are timely will the Court analyze Defendants' motion on immunity and/or traditional Rule 12(b)(6) "failure to state a claim" grounds.

#### A. Statute of Limitations[1]

Mr. Lastarza brings all his claims under 42 U.S.C. § 1983. That statute does not contain its own limitations period but precedent states that the Court should apply the personal injury statute of limitations set in the state where the claim arose. *See Gilbert v. City of Cambridge*, 932 F.2d 51, 57 (1st Cir. 1991) (citing *Owens v. Okure*, 488 U.S. 235, 249–50 (1989)). The statute of limitations for personal injury

---

[1] In addition to opposing Defendants' Motion to Dismiss on statute of limitations, Mr. Lastarza also opposes its motion for failure to state a claim by arguing the state created danger theory. Because the Court dismisses the case on statute of limitations grounds, it need not address that theory here.

7

claims in Rhode Island is three years; thus, a claimant must file a suit for personal injury within three years of learning of the injury and any claim filed after that is time barred. *See* R.I. Gen. Laws § 9-1-14(b). In Section 1983 claims, "a plaintiff is deemed to know or have reason to know at the time of the act itself and not at the point that the harmful consequences are felt." *Morán Vega v. Cruz Burgos*, 537 F.3d 14, 20 (1st Cir. 2008) (internal quotations and citations omitted) (federal law determined when the limitations period begins to run).

There are substantial overlapping facts and claims in the four counts in Mr. Lastarza's Amended Complaint so, for efficiency's sake, the Court will discuss some of the counts together.

    1.    Counts I & III

Counts I and III both allege identical Fourteenth Amendment Due Process/Equal Protection violations so the Court will discuss them together. In Count I, Mr. Lastarza alleges that Defendants: (1) "intentionally identified [Plaintiff] by name as a witness expected to testify in a [2018 state criminal case] . . . while granting other individuals in the same case confidential status"; (2) "withheld [Plaintiff's] constitutional right[] to file a complaint, and have an investigation into a felony committed against [Plaintiff;]" and (3) "prevented [Plaintiff] from using the reporting system available to inmates that are victims of an assault." ECF No. 23, ¶¶ 112-116. In Count III, Mr. Lastarza alleges "Defendants violated [Plaintiff's] right to due process by identifying him by name as a witness expected to testify in the state's case, while granting other individuals in the same case confidential status." *Id.* ¶ 123.

8

Essentially, Mr. Lastarza alleges that his identification as a witness against other inmates, and that he did not volunteer to be a witness, without the confidentiality afforded to other witnesses, led to him being subjected to violence in prison and that his reports through the Rhode Island State Police phone line were ignored or blocked by unnamed RIDOC staff.

While it is not clear from his Amended Complaint when Mr. Lastarza first *knew* he was identified in discovery documents, he alleges that he was *identified* as early as January 2019, and that he was identified as a witness as early as August 2019.[2] *Id.* ¶¶ 35, 54-54. Additionally, as early as June 9, 2020, he knew that the "attorney general's office submitted . . . discovery that wrongfully and deliberately identifie[d] the plaintiff as a witness expected to testify for the state." *Id.* ¶ 60. Even taking the later accrual date of June 9, 2020 where he alleges his awareness of his name in the discovery, the statute of limitations period would have ended as of June 10, 2023. Mr. Lastarza did not file his Amended Complaint until April 25, 2024, almost a year outside the statute of limitations period, and therefore his claims rooted in his identification in discovery documents and the republication of those discovery documents–and the later actions against him in retaliation for his supposed participation in the case against the inmates–are time barred.

---

[2] Mr. Lastarza also does not specify which Defendants he is claiming identified him by name as a witness expected to testify in the state's case. *Id.* ¶¶ 60, 67.

### 2. Count II

Count II also arises out of Mr. Lastarza's identification as a witness in 2019. He alleges that unspecified Defendants violated his Equal Protection rights under the Fourteenth Amendment by failing to address the attacks on him resulting from his identification as a state witness. Specifically, he alleges that Defendants "intentionally disregarded the criminal attacks against [him][,] by refusing to report these crimes committed against [him][,] after internal investigations established these assaults on [him], based solely on the reason that [he] was willfully and knowingly identified in the reports and discovery by the RIDOC and the RIAG." *Id.* ¶ 118. He alleges that he dropped out of all educational programs around late 2019 or early 2020 due to "the continuing abuse and concerns [] since the 2018 discovery began to surface in 2019." *Id.* ¶ 70. Because he references the January and July 2019 discovery documents and reports revealing his name, if any of these injuries resulted from same, Mr. Lastarza had to file his complaint within three years, by January 2022, or the latest by July 2022. Thus, the Court dismisses Count II as untimely under the statute of limitations.

### 3. Count IV

Mr. Lastarza alleges violations of his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment. In Count IV, he alleges that Defendants "subject[ed] him to extreme and unnecessary cruelty by the prison population. . . [including] the inability to access prison rehabilitative programs without the fear of physical and mental harm, and for not intervening on [his] behalf

for more than 5 year period." *Id.* ¶ 125. He alleges that he was forced to "drop out of all programs and to refuse all other programs offered to [him] during these very troubling times, for fear of retaliation while in the education area." *Id.* ¶ 50. Mr. Lastarza also alleges that Defendants violated his Eighth Amendment rights by "subjecting him to more than five years of extremely arbitrary and unnecessary cruelty inflicted upon the plaintiff by both the staff and prison population writ large" and "fail[ing] to provide adequate protections and human treatment to the plaintiff while in the custody of the RIDOC." *Id.* ¶¶ 126-127.

The latter events go back to as early as July 2019, when Mr. Lastarza raised his concerns about being identified in the discovery materials related to the Messier Attack criminal case at his annual classification hearing. *See id.* ¶ 48. Defendant Robinson allegedly told him to "worry about yourself" during the hearing. *Id.* Mr. Lastarza alleges that "[t]his obvious lack of concern or interest by all positions of authority" forced him to drop out of his programs and refuse all programs offered to him. *Id.* ¶ 50. Because his alleged injury occurred as early as July 2019 and he acknowledges plainly in his Amended Complaint that he has suffered this injury for "more than [a] 5 year period[,]" *id.* ¶ 125, his claims against Defendants accrued in 2019 and expired in 2022, well before the filing of his Amended Complaint on April 25, 2024. This same outcome applies to Mr. Lastarza's general allegations of "extremely arbitrary and unnecessary cruelty" because Defendants failed to protect him while in RIDOC custody. *Id.* ¶¶ 126-127. Mr. Lastarza concedes that his claims against Defendants are older than five years, making them time barred.

11

B.  Doctrines Used to Toll the Statute of Limitations

Mr. Lastarza argues that the statute of limitations should be tolled under the continuing violations and continuing tort doctrines.[3] The Court will discuss each briefly as it finds that none apply here.

1.  Continuing Violation and Continuing Tort Doctrines

Mr. Lastarza argues that his action is timely (despite acknowledging that the case began on May 11, 2018, the date of the Messier Attack) under the continuing violation doctrine. "Under this doctrine, a plaintiff can recover for injuries that occurred outside the statute of limitations under certain narrow conditions." *Gorelik v. Costin*, 605 F.3d 118, 121–22 (1st Cir. 2010). The continuing violation doctrine "allow[s] [filing] suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." *Pérez–Sánchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008). "Although the name of the doctrine may sound auspicious for late-filing plaintiffs, it does *not* allow a plaintiff to avoid filing suit so long as some person continues to violate [her] rights." *Id.* In other words, "[a] continuing violation occurs when there is a series of continual unlawful acts, *not* when there are merely continual harmful effects from an original unlawful act." *Muñiz-Rivera v. United States*, 204 F. Supp. 2d 305, 315 (D.P.R. 2002), *aff'd*, 326 F.3d 8 (1st Cir. 2003).

---

[3] Mr. Lastarza superficially references equitable tolling, acknowledging that it applies "where the employer has actively misled the employee" about the reason for their discharge. *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 53 (1st Cir. 1999). This doctrine does not apply to Mr. Lastarza's claims for violations of his Eighth and Fourteenth Amendment rights.

This doctrine does not apply to Mr. Lastarza's claims as the caselaw applying it is limited to Title VII and other discrimination cases. "[T]he continuing violations doctrine indisputably serves as 'an equitable means of ensuring that meritorious discrimination claims are not pretermitted because the claimant needed to experience a pattern of repeated acts before [they] could be expected to realize that the individual acts were discriminatory in nature.'" *Rae v. Woburn Pub. Sch.*, 113 F.4th 86, 103 (1st Cir. 2024) (quoting *Loubriel v. Fondo del Seguro del Estado*, 694 F.3d 139, 144 (1st Cir. 2012)). Mr. Lastarza's claims do not sound in discrimination.

Even if this doctrine did apply to § 1983 claims, Mr. Lastarza's allegations fall outside the doctrine's parameters. "A continuing violation occurs when there is a series of continual unlawful acts, *not* when there are merely continual harmful effects from an original unlawful act." *Muñiz-Rivera*, 204 F. Supp. 2d at 315; *Gorelik*, 605 F.3d at 122 (republication of plaintiff's disciplinary action was not an independently discriminatory act and the public's ability to access those records online was not a continuing tort, but the continuing effects of an alleged harm). He consistently alleges throughout his Amended Complaint and opposition that he knew in 2019 that his name appeared in documents about the Messier Attack and was suffering consequences related to it. Because Mr. Lastarza alleges that during his five years since he was identified, he suffered continuous harmful effects of this act, he does not allege a continuing violation and therefore, his claims are time barred.

Mr. Lastarza's arguments under the continuing tort doctrine also fail. "Under the continuing tort doctrine, where a tort involves a continuing or repeated injury,

13

the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *Boudreau v. Automatic Temperature Controls, Inc.*, 212 A.3d 594, 602 (R.I. 2019) (quoting 54 C.J.S. *Continuing Torts* § 223 at 258 (2010)). The statute of limitations is not tolled, however, in cases where there was a discrete action and injuries occurring after that discrete act "were merely continuing consequences of that single act." *Boudreau*, 212 A.3d at 602.

Mr. Lastarza claims injuries resulting from Defendants ignoring his requests for accommodations to protect him from those who knew of his involvement in the Messier Attack case, but those were the "consequence[s] of separate and discrete acts that had previously occurred." *Pres. at Boulder Hills, LLC v. Kenyon*, 312 A.3d 475, 486 (R.I. 2024) (citing *Boudreau* and finding that the discrete act underlying the tortious interference case ended and any harms alleged were not continuing or repeated injuries sufficient to extend the statute of limitations period). Because he knew he had been identified five years ago and alleges continuing consequences of that act, the statute of limitations is not tolled, and his claims are time barred.

## IV. CONCLUSION

Mr. Lastarza alleges that he has known since 2019 that he was identified as a witness in discovery documents, that those documents became known to the larger prison population, and that knowledge led to constitutional violations against him in the form of threats of and actual physical violence and a lack of access to rehabilitative prison activities. He did not file this case until 2024 and his claims do not fall within any tolling doctrines. As his case was filed outside the three-year

14

statute of limitations, the Court dismisses all four counts. The Court GRANTS Defendants' Motion to Dismiss. ECF No. 32.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief United States District Judge

February 3, 2025